* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
STIPULATIONS
 1. At the time of the alleged injury by accident, the parties were properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
 2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
 3. On April 17, 2002, the date of the injury, this cause was subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
 4. On said date, an employee-employer relationship existed between defendant-employer and plaintiff.
 5. Employer was insured by PMA Group at all times related to this claim.
 6. The plaintiff's injury, which is the subject of this case, is contact dermatitis.
7. Plaintiff no longer works for the defendants.
In addition, the parties stipulated into evidence a packet of documents which included plaintiff's discovery responses, medical records and reports, tax information and Employment Security Commission information.
At the hearing before the Deputy Commissioner, defendants were directed to submit a Form 22 wage chart within 30 days but they failed to do so. However, attached to defendants' contentions were an incomplete Form 22 and a page of hand-written wage information. Although these documents were received into evidence, they are insufficient to address the average weekly wage issue.
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one years old and had received a General Education Development (GED) certificate. Plaintiff began working for defendant-employer in October or November 2001 as a front desk clerk at the motel in Charlotte. Her duties included checking guests in and out of the motel, making sure that they paid for their rooms and pulling cards. She quit working at the motel on November 28, 2001, but was re-hired in March 2, 2002; and continued working there until April 17, 2002.
2. On April 17, 2002, plaintiff's supervisor, Ajit Patel, asked her to wash the windows in the front office when she completed her other work. A short time later, she cleaned the windows as instructed, using the window cleaner provided and Job Finder paper so the windows would not streak. Within five to ten minutes after she finished the task, her hands started to burn and itch. She immediately washed them, but the symptoms returned, and blisters began to form on her hands. Since Mr. Patel was no longer at the motel, she could not report the problem to him until later.
3. By Friday, April 19, 2002, plaintiff's symptoms had worsened, so she called Mr. Patel and told him that she was going to go to the emergency room. She then went to the hospital, where she was given a steroid dose pack and prescribed Benadryl. She subsequently presented to her family doctor, Dr. Amarsinghe, who examined her on April 29, 2002. At this point she had a peeling, red rash on her hands and on the back of her neck that was very painful and swollen. She also had a scaly rash on her elbows. Dr. Amarsinghe prescribed medication for her and referred her to Dr. Hoffman, a dermatologist.
4. Dr. Hoffman evaluated plaintiff on May 2, 2002. At that time, plaintiff had blistering and peeling on her palms, on the back of her neck and head and at the bend of her knees. She told the doctor about cleaning the windows at work and then developing the symptoms. Dr. Hoffman diagnosed plaintiff with infected, irritant contact dermatitis, secondary to the exposure to the cleaning fluid, and psoriasis, which had developed due to an infection. Although plaintiff had psoriasis as a child, she had not had any problems since she was thirteen years old. Dr. Hoffman opined that because plaintiff had psoriasis as a child, she was predisposed as an adult to develop the autoimmune disorder due to the skin infection.
5. Dr. Hoffman prescribed an antibiotic for the infection and gave plaintiff an injection of a steroid medication. He later added moisturizers and other medications. On May 16, 2002, after her condition had improved sufficiently, he ordered UVB ultraviolet light treatments. With the medication and UVB treatments, plaintiff's condition gradually improved; and by July 19, 2002, her skin was substantially clear. As of that date, Dr. Hoffman thought plaintiff could return to work on July 31, 2002, as long as she avoided exposure to cleaning chemicals and solvents. He continued antibiotics to prevent further skin infections, which could trigger another serious outbreak of her psoriasis.
6. In September 2002, Dr. Hoffman also gave plaintiff a B-12 injection and instructed her to take folic acid. When she saw him again on December 18, 2002, she still had some random spots of psoriasis, and she continued to have some areas of psoriasis thereafter until May 2002 when she stopped seeing him for an extended period of time because she could not afford the treatment without insurance coverage. Plaintiff did not return to Dr. Hoffman until December 14, 2004, when she had received coverage under Medicaid. At this visit, plaintiff still had psoriasis and her condition was such that Dr. Hoffman ordered more UVB treatments.
7. Following the incident in question, plaintiff continued working for defendant-employer through April 27, 2002. The evidence did not establish any loss of earnings up to that date. Plaintiff was then unable to work due to her skin condition and, after a period of time, was informed by Mr. Patel that he had to replace her. After her termination, plaintiff remained out of work until Motel 6 hired her on approximately October 31, 2002. Plaintiff continued working for Motel 6 until November 2003 when she left work in order to have heart surgery. As of the date of hearing before the Deputy Commissioner, she had not returned to work. However, her latest period of disability was not proven to have been due to her skin condition. Rather, it appeared to be due to an unrelated heart condition.
8. Prior to April 17, 2002, plaintiff had never cleaned windows during her employment with defendant-employer. Consequently, the fact that she had to clean them on that occasion constituted an unusual occurrence that interrupted her regular work routine. The evidence did not disclose the contents of the bottle of cleaner plaintiff used on that date. The bottle was labeled "Eco-lab" but plaintiff testified at the hearing before the Deputy Commissioner that it did not appear that the cleaner was in the original bottle. Dr. Hoffman was very suspicious that the cleaner had not been properly diluted, which was a fact outside of plaintiff's knowledge. In any event, even without knowing the specifics regarding the cleaner, the doctor was satisfied that the cleaner had caused plaintiff to develop contact dermatitis, that the irritated skin then became infected with either a strep or staph infection and that the infection then caused an outbreak of psoriasis.
9. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on April 17, 2002, when she used the glass cleaner for the first time in her employment. As a result of the exposure to glass cleaner, plaintiff developed contact dermatitis, her damaged skin became infected, and then she developed a general outbreak of psoriasis secondary to the infection pursuant to the Koebner phenomenon. Plaintiff's symptoms became disabling as of April 28, 2002, and she remained unable to work in any capacity through July 31, 2002, the date that Dr. Hoffman released her to return to work, as long as she avoided exposure to cleaning chemicals and solvents.
10. Plaintiff's testimony indicated that this was the only time she had ever cleaned windows during her employment with defendant-employer, and there was no evidence that she used other cleaners at work. Consequently, she could have returned to her job on August 1, 2002, when Dr. Hoffman released her, and did not prove disability after July 31, 2002. Plaintiff subsequently began working for Motel 6 and worked there until she had to stop in order to have heart surgery.
11. The evidence did not address whether plaintiff reached maximum medical improvement. In any event, Dr. Hoffman indicated plaintiff would likely require at least periodic treatment for the foreseeable future. In fact, now that she has developed symptoms of psoriasis, she may have the condition the remainder of her life. At this time, there is no known cure for the condition. Consequently, there is a substantial need for plaintiff to continue medical treatment, which will be necessary for the foreseeable future in order to provide relief and lessen her disability.
12. Although plaintiff attempted to establish that her skin condition was an occupational disease, the evidence was not sufficient to prove that she sustained a compensable occupational disease. This was her only known exposure to cleaning chemicals during her employment with defendant-employer. It was not a regular part of her job. In addition, Dr. Hoffman's medical testimony was insufficient to establish that plaintiff was placed at an increased risk of developing these skin conditions by reason of her employment with defendant-employer. Furthermore, Dr. Hoffman's opinions regarding increased risk assumed that plaintiff was predisposed to developing psoriasis, so any increased risk she might have had was not compared to the public generally, but was in comparison to others who were predisposed to developing psoriasis.
13. Although plaintiff's exposure to the cleaning fluid on April 17, 2002, was a significant contributing factor in the development of her infected contact dermatitis and resulting psoriasis, she did not prove that she was placed at an increased risk of developing these skin conditions by reason of her work activities with defendant-employer.
14. Plaintiff did not sustain an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all other disease of life to which the general public was equally exposed.
15. Defendants reasonably defended this action.
16. Based upon the wage information submitted, plaintiff's average weekly wage is $253.48, generating a compensation rate of $169.00.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 17, 2002, plaintiff sustained an injury by accident arising out of and in her course of the employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff is entitled to payment of temporary total disability compensation benefits in the amount of $169.00 per week beginning April 28, 2002, and continuing through July 31, 2002, the date on which Dr. Hoffman released plaintiff to work, as long as she avoided exposure to cleaning chemicals and solvents. N.C. Gen. Stat. §97-29.
3. As a result of her compensable injury by accident, plaintiff has incurred and continues to incur expenses for medical treatment that is necessary to effect a cure, provide relief or lessen her period of disability. The plaintiff is entitled to payment of said expenses by defendants. N.C. Gen. Stat. §§97-2(19); 97-25.
4. Plaintiff did not prove that she developed a compensable occupational disease that was due to causes and conditions characteristic of and peculiar to her employment and which excluded all ordinary diseases of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-15(13). Bookerv. Duke Medical Center, 297 N.C. 458 (1979).
5. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall pay compensation to plaintiff for temporary total disability in the amount of $169.00 per week beginning April 28, 2002, and continuing through July 31, 2002, the date on which Dr. Hoffman released plaintiff to work, as long as she avoided exposure to cleaning chemicals and solvents. All compensation that has accrued shall be paid in a lump sum, subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury by accident on April 17, 2002, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief or will tend to less the period of plaintiff's disability.
3. Defendants shall pay the costs.
This the __ day of ___________ 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN